[Civ. No. 6077.  Third Appellate District.—April 10, 1939.]

In the Matter of MARY SPIERS (a Person Coming Under the Juvenile Court Law).

Lovett K. Fraser for Appellant Estelle Spiers Laiblin.

Burt W. Busch, District Attorney, for Respondent.

TUTTLE, J.—This is an appeal from an order of the Juvenile Court of Lake County denying appellant's motion to set aside and modify an order made by said juvenile court placing Mary Spiers in the custody of the probation officer.

On July 18, 1936, a petition was filed in the Juvenile Court of Lake County, which contained the following allegations:

"That Estelle Spiers is the mother of said Mary Spiers; that the residence of said Estelle Spiers is Kelseyville, Lake County, California, and that said Estelle Spiers is now confined in the County Jail of the County of Lake; that the father of said Mary Spiers is dead; that at about the hour of two o'clock a. m., on the 4th day of May, 1936, the said Estelle Spiers did take said Mary Spiers to the cabin of James Buchanan, and did knowingly and wilfully permit the said Mary Spiers to remain at said cabin for a period of six days; that said cabin is situate on McGough's Slough in Lake County, and is approximately a half-mile distant from the nearest dwelling-house; that said cabin consists of one large room and a store-room; that at the time said Mary Spiers was so taken to said cabin, and during all the time said Mary Spiers was so permitted to remain at said cabin, said cabin was occupied by the said James Buchanan, and by no other person excepting Mary Spiers; that said Mary Spiers and James Buchanan during said six day period did cook, eat and sleep in said large room in said cabin; that said James Buchanan is a man about fifty-five years of age, and is not a relative of the said Mary Spiers or Estelle Spiers; that

all of the aforesaid facts were known to said Estelle Spiers during said six day period; that on or about the 10th day of May, 1936, the said Estelle Spiers did wilfully and knowingly permit the said Mary Spiers to ride in an automobile alone with one Tom Smith, from the City of Santa Rosa, Sonoma County, California, to the town of Chowchilla, in Madera County, California; that said Estelle Spiers did wilfully and knowingly permit the said Mary Spiers to remain with the said Tom Smith at Chowchilla, California, for a period of about one week; that said Estelle Spiers furnished no money for the support or maintenance of said Mary Spiers during said period, and that said Mary Spiers had no money for her support, and said fact was known to said Estelle Spiers; that during said period, and while said Mary Spiers remained at Chowchilla, California, the said Tom Smith rented a room for said Mary Spiers; that for at least three days and nights of said period, said Tom Smith and said Mary Spiers cooked their meals, ate their meals, and slept alone in said one room; that during said period, and while said Mary Spiers and Tom Smith occupied said room alone, the said Tom Smith had sexual intercourse with said Mary Spiers; that said Tom Smith was of the age of about twenty-seven years, and is not a relative of either the said Mary Spiers or the said Estelle Spiers; that on the night of May 9, 1936, the said Estelle Spiers permitted Mary Spiers to ride in an automobile with two men throughout Lake and Mendocino Counties; that both men referred to were over the age of thirty-five years, and were in no way related to either Mary Spiers or Estelle Spiers; that said Mary Spiers and said men did not return home until one o'clock a. m. on the morning of May 10, 1936; that said Estelle Spiers, since the 1st day of January, 1936, has wilfully permitted and encouraged the said Mary Spiers to visit alone at the houses of men many years older than the said Mary Spiers, and has permitted the said Mary Spiers to ride about in automobiles with such men throughout Lake, Sonoma and Mendocino Counties, and has permitted said Mary Spiers to accept and receive gifts and presents from such men; that Mary Spiers has no parent or guardian actually exercising proper parental control over her, and said minor child is in need of such control.''

Thereafter, citation was duly issued to Estelle Spiers, mother of the minor mentioned in the petition, directing her to appear on the 30th day of July, 1936, at which time the matter came on regularly for hearing in the juvenile court, and the court found that all the allegations in the petition were true. The court entered its judgment to the effect that said Mary Spiers was a person coming within the provisions of the Juvenile Court Law, adjudged her a ward of the court, and placed her in the care and custody of the probation officer of Lake County.

■ It is contended that the court had no jurisdiction in the case, because of the fact that there was no proof of service of citation upon the mother of the minor—Estelle Spiers. We have examined the record and find the contention is without merit. The probation officer, on the witness stand, testified that he made such service by personally handing to the mother, Estelle Spiers, a copy of the citation. This is all that the law required. Jurisdiction does not depend upon proof of service, but upon the fact that service has been made. (*Vail* v. *Jones,* 209 Cal. 251–255 [287 Pac. 99].)

■ It is next contended that the probation officer was a party to the action, and that he was disqualified from making service of the citation under the provisions of section 410 of the Code of Civil Procedure, which prohibits the service of a complaint by a party to the action. We are of the opinion that the probation officer was not a "party to the action" in the sense that those words were used in the section last mentioned, any more than a district attorney would be a "party to the action" in a criminal action. In a juvenile court proceeding the People of the State of California are parties to the action, and the other parties may be said to be those upon whom service is required to be made under the provisions of the Juvenile Court Act.

■ It is also contended that the petition of the probation officer recites that the proceedings were instituted under subdivisions 8 and 9, section 1 of the Juvenile Court Act, which, as the law read on August 7, 1936, referred to the use of liquor, cigarettes, or drugs, and to a minor who persistently or habitually refuses to obey the orders of his guardian or parent, or who is beyond the control of such guardian or

parent; whereas, the court found that there had been a violation of sections 2 and 11 of section 1 of the Juvenile Court Act, which sections refer to a minor who has no parent or guardian actually exercising proper parental control, and to a minor who is in danger of leading an idle, dissolute, lewd or immoral life. We are of the opinion that the petition is not to be judged by reference therein to certain subdivisions of the act. In ascertaining the true meaning and purport of the petition, the court must look to the allegations of fact, rather than to a mere mention of certain portions of the act by number. Following this rule and reading the very full statement of facts relating to the charge of delinquency, we are satisfied that there is no real variance between the allegations of the petition and the findings of the court.

It is finally contended that the testimony given on the hearing of this motion showed such a change of condition with respect to the home environment of the minor, that the trial court would be compelled to modify its order and return the child to the custody of her mother. It appears that at the time the original proceedings were had with reference to this matter, the mother of said minor was confined to the county jail, having been convicted of a felony. Subsequently, she appealed her case, and the judgment of conviction was reversed. Thereafter, she married one Charles S. Laiblin, and she is now living with her husband. The latter testified that he was worth some $25,000, and had a good home in Santa Rosa, and desired to have the child with him and her mother. The mother testified that she had received a letter from her daughter, stating that she wished to come home and live with her mother. She also testified that she had pleaded guilty to the charge of perjury, and was then on probation.

We cannot say as a matter of law that the juvenile court judge was compelled to modify the order upon such a showing. It is well settled that a judge of the superior court, sitting in the juvenile court, is vested with a wide discretion in disposing of a motion of this character. This is the rule applied to a motion for a change of custody of a minor child, in an action for divorce, by way of modification of a previous order. (*Dickerson* v. *Dickerson*, 108 Cal. 351 [41 Pac. 475]; *Crater* v. *Crater*, 135 Cal. 633 [67 Pac. 1049].) Furthermore,

the Juvenile Court Act (former sec. 9—now sec. 745), provided, and now provides that in passing upon a motion to modify a previous order, such order "may at any time be changed, modified, or set aside, as the judge deems meet and proper". Discretion has been defined as "a decision of what is just and proper under the circumstances". (Bouvier Law Dict.) The portion of the act quoted indicates clearly that the matter of modification of an order of this character rests within the sound discretion of the judge. We have before us in the record the findings of the juvenile court judge in the original proceeding. They cover several pages of the transcript, and follow almost word for word the allegations of the petition. The charges made against the mother, arising out of lack of parental control, are of a very serious nature, and it is quite clear that the child's mother exercised no degree of control whatever over her conduct or actions, although the child was only thirteen years of age. Furthermore, it could be reasonably inferred, from the record, that the mother acquiesced in the acts specified, which acts manifestly tended toward an immoral life upon the part of her daughter. We hold that the trial judge very rightly may have concluded that the mere fact of the subsequent dismissal of the charges against the mother, and her remarriage and acquisition of a new home, were not sufficient assurances that the mother would have any greater degree of control over the child than she had before. In any event we are satisfied that there was no abuse of discretion on the part of the judge of the juvenile court in denying the motion.

The order is affirmed.

Thompson, J., and Pullen, P. J., concurred.