[Crim. No. 3715.   Second Dist., Div. Three.   Sept. 14, 1943.]

THE PEOPLE, Respondent, v. SAM MARINO RENTERIA, Appellant.

William T. Selby for Appellant.

Robert W. Kenny, Attorney General, Eugene M. Elson, Deputy Attorney General, and M. Arthur Waite, District Attorney, for Respondent.

WOOD (Parker), J.—Defendant was accused of theft of an automobile. In a trial by jury he was convicted. He appeals from the judgment, the order denying his motion for a new trial, and all orders and ''rules'' of the court. His contentions are: (1) the case should have been tried in the juvenile court for the reason he was 17 years of age; (2) the purported hearing in the juvenile court wherein it was ordered that the case be tried in the superior court was a sham and conferred no jurisdiction on the superior court; (3) certain evidence was received improperly; (4) there was no evidence that defendant took the automobile; and (5) there was no evidence of an intent to deprive the owner of the automobile permanently.

On February 13, 1943 (Saturday), about 8:45 p. m., Harry Dysart parked his Ford automobile on a street in Ventura. About an hour later he observed that his car was gone. He did not give anyone permission to take the car. The next morning the car was found by officers in an orchard near the State School for Girls at Ventura.

An employee of that school testified that on February 14, 1943 (Sunday), about 7:30 a. m., while he was driving an automobile on a road near the school he passed a Ford auto-

mobile which was parked at the side of the road about 30 feet from the witness, and he saw a lone person therein, at the driver's place, who appeared to be the defendant; that a few minutes thereafter he saw the same person drive the automobile from the place where it had been parked into a private driveway in a nearby orchard and park it near the entrance; that the witness then drove his car into that driveway from an entrance at the opposite side of the orchard, and in passing the parked car on the 16-foot-wide-driveway, he saw, and was within an arm's length of, the person who was at the driver's place in that car, and the said person was the defendant; that the witness proceeded to the school, returned to the orchard about 10 a. m., and saw the same car therein that he had passed previously, but no one was in it; that the car taken from the orchard by the officers was the same car in which the witness had seen the defendant.

About 9 a. m. on February 14 (Sunday), two officers saw defendant running on a street, in a direction away from the car, about 500 yards from the place where the car was found in the orchard. One of the officers asked him what he was doing, and he replied, "I am out exercising." They searched the defendant and saw a pair of gloves in his pocket, but they did not take the gloves from him. After they had questioned defendant in the sheriff's office, those gloves were found on the floor therein under a table at which defendant had been sitting. Dysart, the owner of the car, testified that the gloves were his, and he had left them in his car.

Bertha Aguilar, an inmate of the State School for Girls at Ventura, testified that she knew defendant, that he had visited her at the school on Thursday, February 11, under the name of James Aguilar, which was her brother's name. She testified further, after objections by defendant's counsel, to such further testimony were overruled, that defendant asked her if she wanted to run away, and she said, "No"; that he said if she changed her mind he would be halfway up the road to the school on Sunday at 8:00 a. m., and that she should run to the car when she was marching to mass on Sunday; that she was not at the school on Sunday because the officers, who arrested defendant, had taken her to a detention home on Friday.

In defendant's suitcase, which was at the side and near the rear of an apartment house, the officers found a letter dated February 11, 1943, written by defendant, which was received in evidence and stated in part: "Dear Johnnie. . . . Now

getting to some real confidential business you know why I'm here in Ventura. I saw Bertha as I planned. . . . When I saw her . . . I was kind of nervous. . . . If you had of been in my place you'd be nervous too, because if you get hooked it's the pen for you, but I had to take that chance because she means . . . a lot to me. . . . If I get her out and we get married, and if she breaks up with me, well it'll hurt me a lot inside. . . . I wouldn't have nothing to look forward in the future, as she is all that counts with me now. If I make it a clean beat, I am taking her to my sister's house. . . . You see, right now that I'm only wearing drapes. The guys keep staring like hell at me. They ain't nothing but a big bunch of squares. . . . Wish me luck as I'll need it bad. Sam.''

On cross-examination by defendant's counsel, concerning conversations with defendant, one of the officers stated that defendant said he had told Bertha Aguilar he was going to, or attempt to, get her out of the school. Also on such cross-examination the officer said he found two bus tickets in defendant's billfold which tickets were for transportation from Ventura to Los Angeles and were purchased on February 12 (Friday); that at first defendant said he bought the tickets at different times, but later, after the officers had shown that the numbers on the tickets were consecutive, he said he bought both tickets at the same time and that he bought them for Bertha and himself so that he would be sure of a way to go south if he got Bertha out of the school.

Defendant did not testify.

■ It was not error to try the case in the superior court instead of the juvenile court. Section 825 of the Welfare & Institutions Code provides: ''No court shall have jurisdiction to try the case of any person under the age of eighteen years at the time of . . . commission of a . . . crime unless the matter has first been submitted to the juvenile court by petition . . . or by certificate of any other court . . . and said juvenile court has made an order therein directing that such person be prosecuted under the general law.'' At the preliminary examination in the justice court, upon the complaint charging defendant with theft of the automobile, it appeared that defendant was 17 years of age, and thereupon the justice, in accordance with the provisions of section 826 of the said code, suspended the proceedings, and certified and transferred the case to the juvenile court. Section 734 of the Welfare & Institutions Code provides: ''If upon the hearing [in juvenile court] . . . the court determines that any person

alleged to come within the provisions of subdivision (m) of section 700 [relating to persons who commit crime] is not a fit and proper subject to be dealt with under [the Juvenile Court Law] the court may dismiss the petition, and direct that the person be prosecuted under the general law." The juvenile court found that defendant was not a fit person to be dealt with under the Juvenile Court Law and remanded the cause for prosecution under the general law. Section 827 of the Welfare & Institutions Code as amended in 1939 provides that upon receipt of the certification from the court in which the accused was charged, ". . . the clerk of the juvenile court shall immediately notify the probation officer who shall thereupon file a petition as provided in sections 721 and 722 of this code, except that such petition need not be verified; and the probation officer need make no investigation prior to the filing of such petition. . . ." A petition was not filed in the juvenile court. Defendant asserts that the superior court did not acquire jurisdiction to try the case because such petition was not filed.

The "manner of invoking the jurisdiction of the juvenile court" is stated in section 720 of the Welfare & Institutions Code as follows. "A person subject to its jurisdiction may be brought before the juvenile court by any of the following means: (a) A petition praying that such person be declared a ward of the juvenile court. . . . (b) A petition that such person be declared free from the custody and control of his parents. . . . (c) Certification from any other court before which such person is brought, charged with the commission of a crime."

Jurisdiction of the juvenile court includes minors who are within various descriptions (Welf. & Inst. Code, sec. 700) including a minor "(m) Who violates any law of this State . . . defining crime." Other subdivisions of that section relate to the habits and acts of a minor, or conditions affecting him, which require that he be declared a ward of the juvenile court for the purpose of eliminating the habits, acts, or conditions. Under such circumstances, the juvenile court acquires jurisdiction by a petition asking that the minor be declared a ward of the court. (Welf. & Inst. Code, sec. 720, subd. (a).) Section 701 of that code provides that the acts or condition of his parents may require that he be freed from their control. In that event the jurisdiction of the juvenile court is invoked by a petition. (Welf. & Inst. Code, sec. 720, subd. (b).) The petition which the probation officer is directed to file upon notice from the clerk after the certification of a

case to the juvenile court from another court is not necessary to confer jurisdiction upon the juvenile court, inasmuch as the certification from the other court filed under section 720, subdivision (c) of the Welfare & Institutions Code confers jurisdiction. The provision that the probation officer should file a petition is therefore directory and not mandatory, under the circumstances of this case wherein the juvenile court considered only whether defendant was a fit subject for consideration under the Juvenile Court Law, and did not retain the case in the juvenile court, but remanded it for proceedings under the general law. As above noted, section 825 of the Welfare & Institutions Code, concerning jurisdiction, does not include a provision for such petition by a probation officer. In *People* v. *Wolff*, (1920) 182 Cal. 728 [190 P. 22], a cause was certified by a justice court to a juvenile court after finding that the defendant was under 18 years of age, but it failed to attach to its certificate a certified copy of the complaint in accordance with a provision of the Juvenile Court Act. It was contended therein that such omission deprived the juvenile court of jurisdiction. The court said at page 733: ''We do not think the requirement was intended to be jurisdictional. The clause requiring such copy to be attached is obviously merely directory in character and effect, the object being to apprise the juvenile court of the nature of the charge.'' A similar provision, relative to attaching a copy of the complaint, is now in section 827 of the Welfare & Institutions Code as amended in 1939. As above noted, the provision relative to filing a petition by the probation officer is also in section 827. It is to be noted further, it is therein provided that such petition need not be verified, and the probation officer need make no investigation prior to filing such petition. If such a petition were filed it would embody practically the same information, relevant to a consideration of defendant's fitness for the juvenile court, as that disclosed by the certification from the other court. If the provision of section 827 relative to attaching a copy of the complaint is directory, it would seem that the provision of the same section relative to filing a petition by a probation officer, without verification or investigation, after certification of the proceedings by another court, would likewise be directory and of no jurisdictional importance, at least insofar as the right of the juvenile court to determine whether the person is a proper subject for consideration under the Juvenile Court Law is concerned.

Defendant also contends that the hearing in the juve-

nile court was a sham, in that the evidence was inadmissible and without probative force. The hearing was sufficient and justified the order remanding the cause for prosecution under the general law. ▉ Section 831 of the Welfare & Institutions Code provides in part: "If the judge of the juvenile court finds that the person . . . is a fit subject for consideration under the provisions of this chapter, he may make such order . . . as he deems best in relation to such person. If the judge at any time thereafter concludes that the person is not a fit subject for further consideration . . . he may sit as a committing magistrate and hold a preliminary examination . . . or he may remand the person to the court in which the charge is pending. . . ." It was contemplated, as shown by that section, that the juvenile court judge might conclude at any time during the progress of some proceedings in the juvenile court that defendant was unfit for further consideration under the Juvenile Court Law. The matter of determining that issue rested within the sound discretion of the juvenile judge. (See *In re Spiers*, (1939) 32 Cal.App.2d 124, 129 [89 P.2d 456].) ▉ Section 551 of the Welfare & Institutions Code provides: "This chapter [juvenile court law] shall be liberally construed, to the end that the care, custody, and discipline of a ward of the juvenile court . . . shall approximate as nearly as possible that which should be given by his parents. . . ." The general purpose of that law, therefore, is to supplant parental control, custody, and discipline which has been lacking, with the end in view that the child should not become a criminal in later years, but a useful member of society. The law recognizes, however, that a minor may have such a record of delinquency and his derelictions be of such character that to make him a ward of the juvenile court would not aid him or serve the purpose of the Juvenile Court Law, and probably would defeat such purpose insofar as the protection of other wards of the court is concerned.

▉ At the hearing in the juvenile court a deputy sheriff testified in substance the same as hereinabove stated concerning the arrest of defendant on the present charge; that the officers found defendant's suitcase and blanket under bushes at the side and near the rear of an apartment house where defendant said he had ditched them; that defendant said he was a fighter by profession and that he was running the morning of his arrest because he was in training, taking exercise; that Bertha Aguilar, an inmate of the school, said in the presence of defendant and the officers that plans were

made for defendant to assist her in escaping from the school by meeting her on the school road after she "broke lines" on the way to mass; that he (officer) believed that Bertha was connected with a group of Mexicans which was involved in a murder in Los Angeles County; that the officers found, in defendant's suitcase, an album containing newspaper clippings and pictures relative to a murder in Los Angeles County; that another inmate of the school identified defendant as a person who was at the window of her cottage on the night of February 10, 1943; that he (officer) received a teletype from the Sheriff of Los Angeles County which stated that defendant had been arrested at different times upon charges of kidnaping, robbery and burglary; that he had been committed to Whittier State School and Preston State School; that he had violated parole from Preston School, and had been recommitted.

A juvenile officer testified in the juvenile court that he had examined the record of defendant, and in his opinion defendant was incorrigible and not a fit subject for the juvenile court; that he had been committed to Whittier State School, and to Preston State School, and had violated his parole and had been recommitted to the Preston School, and was paroled again.

At the time the judge of the juvenile court found that defendant was not a fit subject for the juvenile court, he stated: "The thing that rather settles my mind as far as you are concerned is that you have been in Whittier and you have been in Preston, and paroled and violated it, and went back and were paroled again and out, and now the record shows at least a prima facie case of two felonies up here in this County."

Defendant contends further that the superior court erred in admitting the testimony of Bertha Aguilar relative to the conversation between her and defendant concerning plans for her escape. His argument is that such evidence did not tend to show that he took the automobile; that it was offered to injure defendant by suggesting that he was connected with an attempt to commit a crime other than the one upon which he was being tried. Such evidence was admissible to show a motive for stealing the automobile (*People* v. *Lucich,* (1931) 111 Cal.App. 293 [295 P. 593]; *People* v. *Guttmann,* (1935) 10 Cal.App.2d 490 [52 P.2d 495]), and to show intent. (*People* v. *Coltrin,* (1936) 5 Cal.2d 649 [55 P.2d 1161].)

Furthermore defendant's counsel cross-examined one of

the officers (Bowman) extensively concerning statements made by defendant to the officers relative to his plans to assist Bertha in escaping from the school, which officer had not testified previously concerning such statements. In such cross-examination the reference to the attempted escape was repeated at defendant's request. If it had been error to receive such testimony, the error was cured by such cross-examination. (*People* v. *Hendricks*, (1933) 129 Cal.App. 156, 159 [18 P.2d 715]; *People* v. *Raymond*, (1927) 87 Cal.App. 510, 526 [262 P. 442].)

■ Another contention of defendant is that there was no evidence defendant took the automobile. The facts we have related sufficiently dispose of that contention. The jury was entitled to consider the fact that defendant did not testify, in determining whether he took the automobile. (Art. I, sec. 13, Const. of Cal.) There was sufficient evidence from which the jury might infer, as it did, that defendant took the automobile.

■ The last contention of defendant is that there was no evidence of an intent to deprive the owner of the automobile permanently. His argument is that it might be that defendant violated section 499b of the Penal Code, which relates to taking an automobile for the purpose of temporarily using it; or it might be that he violated section 503 of the Vehicle Code, which relates to taking an automobile with intent to either permanently or temporarily deprive the owner thereof; however, in either event he would not be guilty of grand theft, the only crime with which he was charged; that "anything but a permanent taking is not theft although it may be a violation of one of the other sections mentioned." He argues further that if there was any evidence of an intent it was an intent to use the car temporarily in transporting the girl from the school to the bus station, as evidenced by the fact that he had purchased two bus tickets. It might also be argued, with equal force, that he purchased the tickets for use in the event he did not steal an automobile. Whether the automobile was taken with intent to deprive the owner of it permanently was a question of fact for the jury. The trial court gave three instructions to the effect that the jury could not find defendant guilty of grand theft unless it was proved beyond a reasonable doubt that defendant intended to deprive the owner of said automobile permanently. The court also gave an instruction that, "If it appears that property has been taken with the intent to make but a temporary or specific use of the

property, then a conviction of grand theft may not occur." The court instructed the jury further that, "Evidence of the recent, unexplained possession of stolen property, standing alone, is not sufficient to justify a verdict of guilty of the crime of theft." The instructions were accurate and clear, and the evidence was sufficient to justify the verdict.

The judgment and the order denying the motion for a new trial are affirmed. The appeals from the other orders and the "rules" of the court are dismissed.

Desmond, P. J., and Shinn, J., concurred.