[Civ. No. 9407.   Third Dist.   Oct. 24, 1958.]

JAY ROCKEY PETERSON, a Minor, etc., et al., Plaintiffs and Respondents, v. ALLSTATE INSURANCE COMPANY (a Corporation), Appellant; LORENA ANNA BAILEY, Cross-complainant and Respondent.

Leo J. Walcom for Appellant.

Ralph E. Kingston and Elmer L. Winger for Respondents.

PEEK, J.—This controversy arises out of an accident which occurred on May 20, 1954, when Jay Peterson, a minor, while riding his bicycle, was struck by an automobile owned and operated by the defendant, Mrs. Bailey. She reported the accident to her insurance company, the defendant, Allstate, and was informed that the company declined to defend upon the ground that her liability policy had been cancelled for nonpayment of premium. Thereafter an action was commenced against Mrs. Bailey by Ivan F. Peterson individually and as guardian ad litem for his son, Jay, which resulted in a judgment in favor of plaintiffs for damages growing out of the accident.

The present action was brought by plaintiffs against Mrs. Bailey and Allstate to recover on the previous judgment. Mrs. Bailey cross-complained against Allstate, alleging that she had complied with all of the provisions of the policy and that the same was in full force and effect at the time of the accident.

At the conclusion of the trial the court granted plaintiffs' motion to amend to conform to proof by adding the further allegation that Allstate, by its conduct, had waived its right to cancel the policy for nonpayment of premium and was thereby estopped from asserting such defense. Allstate, by its answer, admitted the issuance of the policy but denied that Mrs. Bailey had complied with all of its terms and asserted it had cancelled the policy for cause before the accident. The trial court found in accordance with the allegations of the complaint and cross-complaint and gave judgment against Allstate in the sum of $5,000, the amount recovered against Mrs. Bailey in the first action, together with attorney fees incurred by her in defending the first action.

On appeal Allstate urges (1) that there was insufficient evidence to support the finding of a valid, uncancelled policy; (2) that the first action was not an "actual trial" as required by condition six of the policy; and (3) that there is no evidence to support the finding and judgment relating to Mrs. Bailey's right to attorney fees incurred by her in defending the first action.

The record discloses that on April 5, 1953, Allstate issued to Mrs. Bailey an automobile liability policy for the term ending April 5, 1954. It provided that the premium therefor should be paid in installments. Although the premium was ultimately paid in full, each deferred payment, as shown by the cost ledger sheet of her account which was placed in evidence by Allstate, was late for periods of a few days to more than a month.

On April 5, 1954, Allstate issued a certificate extending Mrs. Bailey's previous auto liability coverage to April 5, 1955, for a total premium of $80.25 payable as follows: $33.25 on delivery of the certificate; $24 three months after delivery of the certificate; and $24 six months after delivery thereof.

On April 12, 1954, Mrs. Bailey paid $16.58 to Allstate at its Modesto office. On April 13, 1954, Allstate mailed to her a cancellation notice for nonpayment of premium, giving her no credit for the partial payment made. On April 14, 1954, Allstate, having received the payment of $16.58 at its Menlo Park office, mailed a notice of reinstatement to her notwithstanding that a portion of the amount due remained unpaid. On May 3, 1954, Allstate mailed a notice of cancellation for nonpayment of premium which stated that $23.25 was past due on the first installment. This was erroneous since only $16.67 was past due. Cancellation was declared to be effective

May 15, 1954. Each notice of cancellation was in accordance with the provision of paragraph five of the contract allowing cancellation not less than 10 days after receipt of the notice by the assured. The accident in question occurred, as previously noted, on May 20, 1954.

The case was tried upon the theory that Allstate's purported cancellation was the result of a mistake or that by its actions it had waived its right to cancel the policy for nonpayment of premium, and hence in either event the policy was in full force and effect at the time of the accident. The memorandum opinion of the trial court treats the case in this same fashion.

Allstate's first contention is that the evidence was insufficient to sustain the finding that the policy was in force on May 20. In this regard it attacks certain findings as being improper as well as unsupported by the evidence. Here it should be noted that no objections were made in the trial court to such findings, nor were other or more definite findings proposed. Hence any objection thereto was waived. (*Kalmus* v. *Cedars of Lebanon Hospital*, 132 Cal.App.2d 243 [281 P.2d 872].) It is the further rule that on appeal a reviewing court will liberally construe the findings in support of the judgment (*Metcalf* v. *Hecker*, 127 Cal.App.2d 634 [274 P.2d 188]) and indulge in all reasonable inferences in support thereof.

Although it was established that Allstate mailed, and Mrs. Bailey received, the cancellation notice of May 3, there is ample evidence to support the trial court's finding that the policy was ". . . on the 20th day of May, 1954, in full force and effect and was uncancelled and unrevoked'' and the implied finding that Allstate's purported cancellation was the result of a mistake. The cancellation notice of May 3, stating that $23.25 remained past due implied that only $10 had been paid, when in fact she had paid $16.58, indicates on its face that Allstate was mistaken regarding the amount paid by her. Moreover it may properly be inferred from the evidence and the cancellation notice that the policy was being cancelled because a portion ($23.25) of the deferred premium payment was past due and unpaid; that if some amount less than that sum had been due, the cancellation notice would not have been sent when it was. This latter inference is supported by testimony elicited from one of Allstate's officers, James Mundell, the manager of its accounting division, who testified: ". . . this is merely a situation where we attempted to cancel

her [Mrs. Bailey] as soon as possible because the money had run out as far as we were concerned, . . .'' Mr. Mundell's statement reveals that Allstate attempted to cancel only because of its mistaken belief that Mrs. Bailey's payment covered her only to April 20, which in turn led to the mistaken belief that she was not covered on May 3, the date of the cancellation notice. As a matter of fact, her payment of $16.58 covered her through May 12, 1954, and hence had not the 10-day notice been sent prematurely through mistake, she would have been covered on the day of the accident, May 20. Research has revealed no California case directly in point; however, we are impressed with the rule expressed in *Richmond Ins. Co.* v. *Zettwoch*, 216 Ky. 463 [287 S.W. 964], and *Fisher* v. *Globe & Rutgers' Fire Ins. Co.*, 147 La. 984 [86 So. 417], that a cancellation by mistake is no cancellation at all.

The record as summarized, when viewed in light of the cited rule, amply supports the conclusion of the trial court that had the insurer known the true state of affairs it would not have sent the notice of cancellation on May 3, and that since the cancellation notice was sent under a mistake of fact, it was consequently ineffective.

Likewise without merit is the further contention of Allstate that there is no evidence to support the implied finding of the trial court that, by its conduct, it had waived its right to cancel the policy for untimely and incomplete payment of premium so long as the payments made and accepted exceeded the premium earned. As previously noted there can be no question that from the due date of the very first premium installment payment on the initial policy Mrs. Bailey had failed to perform in accordance with the terms of the contract. The record further shows that Allstate, with full knowledge of such facts, continued to recognize the policy as being in full force and effect by accepting delinquent, as well as insufficient, payments thereon. Such acts on the part of Allstate were wholly inconsistent with any intent to insist upon a forfeiture. It therefore waived such ground as a basis for cancellation of the policy. (See 16 Appleman, Insurance Law and Practice, 812.) Having so waived strict compliance with the deferred payment terms, it was bound to give Mrs. Bailey a reasonable notice to thereafter comply strictly with scheduled premium payments before it could depart from its usual procedure and cancel the policy for nonpayment of

premium. (*Frad* v. *Columbian National Life Ins. Co.*, 191 F.2d 22; cert. denied.)

■ Allstate further contends that the judgment which formed the basis for the present action was not recovered after an "actual trial" as provided in condition six of the policy. It is not denied that Mrs. Bailey, in accordance with the provisions of the policy, informed Allstate of the accident and that the company refused to defend. By its breach, Mrs. Bailey was thereby placed on her own and compelled to protect herself as best she could. The company having breached its agreement, she was entitled to proceed in whatever manner seemed to her to be proper under the circumstances. Accordingly, if it appeared that plaintiffs' claim should be compromised, and if in good faith it appeared to her that the proposed settlement was just, reasonable and prudent, her acceptance thereof cannot now be attacked. The contention of Allstate places it in the anomalous position of contending on the one hand that the contract was breached by defendant for failure to pay premiums and therefore was of no force and effect; and yet on the other hand of contending that Mrs. Bailey was bound by the terms of the breached contract relative to "actual trial." This is not the general rule (see 142 A.L.R. 812), nor is it the rule in California.

■ "The denial of liability on the part of the insuring company and its refusal to defend the suits constituted such a breach of the contract that the insured was released from his obligation to leave the management thereof to it, and was justified in proceeding to defend on his own account. [Citing cases.]" (*Lamb* v. *Belt Casualty Co.*, 3 Cal.App.2d 624, 630-31 [40 P.2d 311]; see also *Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App.2d 245 [286 P.2d 1000].)

■ Allstate's final contention is likewise without merit. It is clear that where it is found that an insurance company has failed to defend an action on behalf of the assured, while legally obligated to do so, a reasonable award of attorney fees in defending the initial liability suit is appropriate. (*O'Morrow* v. *Borad*, 27 Cal.2d 794 [167 P.2d 483, 163 A.L.R. 894]; *Ritchie* v. *Anchor Casualty Co., supra.*) The finding of the trial court that $350 was a reasonable attorney fee is amply supported by the record.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.