[No. B064910. Second Dist., Div. Two. July 12, 1995.]

GLENN B. TAYLOR et al., Cross-complainants and Respondents, v. LOUIS W. VARGA et al., Cross-defendants and Appellants.

**COUNSEL**

Staitman, Snyder & Tannenbaum and Gerald P. Peters for Cross-defendants and Appellants.

Philip D. Brent for Cross-complainants and Respondents.

**OPINION**

**FUKUTO, J.**—This is a consolidated appeal by cross-defendants Louis W. Varga and R. Agnus Varga from a judgment by court after default entered

April 8, 1992, and from an earlier order of January 22, 1992, ordering appellants and their attorneys to pay sanctions in the amount of $2,190 in connection with appellants' motion for relief from default. A fire at appellants' restaurant allegedly caused damage to adjacent premises, and the insurer for the adjacent premises brought a subrogation action against appellants and lessor respondents, who cross-complained against lessee appellants for indemnity. Appellants were served by publication; their default was entered; and they unsuccessfully attempted to obtain relief from default and to vacate the default. Judgment after default was entered. Appellants contest the validity of the default and the court's orders denying relief from default, contending that the request to enter default was defective and that default could not properly be entered following service by publication.

*The Chronology*

On May 23, 1989, Civil Service Employees Insurance Company (Civil Service) sued appellants for subrogation. The complaint alleged that appellants used their premises on North Cahuenga in Los Angeles in such a way that a fire occurred which spread to and damaged the premises of Civil Service's insureds, Carlos and Estela Castaneda, doing business as Graphic Reproductions. Respondents herein, Glenn B. Taylor and Stuart A. Zinn, were added as Doe defendants. Civil Service had paid its insureds $111,769.85 and was attempting to recover those payments from appellants.

Respondents filed a cross-complaint, the basis of this appeal, against the Castanedas and appellants on May 24, 1990. Taylor and Zinn alleged that Civil Service was attempting to recover from respondents as lessors to appellants the sums paid by Civil Service to the Castanedas. Both the lease with the Castanedas and the lease with appellants allegedly contained hold-harmless clauses as well as a provision exempting the landlord from liability except for willful or grossly negligent conduct. The cross-complaint alleged causes of action for breach of contract, express indemnity, declaratory relief against the Castanedas, and declaratory relief against appellants.

On May 31, 1990, respondents served appellants' insurer, U.S. Risk Managers (Crusader) with copies of the complaint and summons and a request to appellants to hold respondents harmless and defend the action brought against respondents. In a cover letter dated May 28, 1990, respondents' counsel wrote to Crusader, asking that the insurer accept service of the notice of action with a request for a defense of appellants; defend and indemnify respondents in the action brought by Civil Service, as well as indemnify for legal fees in defending that action; and indemnify respondents for damages incurred in their cross-complaint against appellants. By letter

dated July 31, 1990, Crusader refused to accept service of process for appellants but asked to be advised if and when service was effectuated so it would determine whether to appear for and on behalf of appellants.

The Castanedas were served with the cross-complaint and requested a defense from Civil Service. Appellants, however, were served by publication. Publication was ordered on September 18, 1990, and was effected in the Los Angeles Daily Journal on September 21, 1990, September 28, 1990,[1] October 5, 1990, and October 12, 1990. Proof of such service was executed on October 12, 1990, and filed on October 17, 1990.

A status conference was held November 5, 1990, and there was no appearance by Civil Service. The complaint and cross-complaint were both dismissed.

Respondents filed declarations of inability to ascertain the address of appellants on January 23, 1991. Crusader was served with these declarations.

The request for entry of default by respondents as to appellants also was filed January 23, 1991. The request was not mailed to appellants, "whose addresses [were] *unknown* to plaintiff or plaintiff's attorney" (original italics), but the request was mailed to Crusader on November 2, 1990. Commissioner John W. Dickey entered default as requested on March 19, 1991.

Almost six months later, on September 17, 1991, appellants moved for relief from default. Crusader retained a law firm to defend appellants' interest regarding the cross-complaint in the case at bar. In the motion for relief from default, counsel for appellants contended that he had contacted respondents' counsel and asked that he be advised "if and when service of the Cross-Complaint was effectuated upon [appellants]." Counsel claims that, although he discovered service by publication was "purportedly effectuated and [appellants'] default was entered by the Court on March 19, 1991,"[2] counsel has "never been advised of these facts by counsel for Cross-Complainants," respondents herein. Therefore, on behalf of appellants, counsel sought relief from default pursuant to Code of Civil Procedure section 473.

---

[1] Respondents served a declaration of inability to ascertain address on Crusader on October 2, 1990.

[2] The declaration by Mr. Staitman in support of the motion for relief from default stated he first learned on July 12, 1991, several months before seeking relief from default, that respondents had filed a request to enter the appellants' default. Within a few days, he discovered the default had actually been entered on March 19, 1991. The correspondence attached to the motion reveals (1) that Staitman's law firm "will determine if we can appear for and on [appellants'] behalf" if and when service is effectuated upon the appellants on the cross-complaint and (2) the law firm maintained it was not authorized to accept service of process for appellants but if and when service was effectuated, Crusader asked to be advised "so I can determine from my principal whether it will appear for and on behalf of [appel-

Respondents opposed the motion for relief from default. The opposition explained that Crusader knew of the cross-complaint and refused to appear for appellants and indemnify respondents, necessitating a court order for and service by publication. Crusader retained counsel to defend cross-complainants as defendants in the action by Civil Service. Counsel was fully aware of respondents' attempts to have Crusader appear for the Vargas. Moreover, Crusader (appellants' insurer and employer of appellants' attorneys) was served with a copy of the declaration of inability to ascertain address with the request for entry of default. The opposition emphasized that service of the motion for relief from default was not made until October 18, 1991, 11 months after default and 7 months after entry of default and the motion was thus untimely. Finally, respondents sought sanctions.

The trial court, per Judge Carol J. Fieldhouse, heard the motion for relief from default on November 18, 1991, and denied the motion on November 21, 1991.

On December 9, 1991, appellants through their counsel filed a second motion, this one entitled motion to set aside the default. This motion was based not on Code of Civil Procedure section 473,[3] but on section 585, subdivision (c). Appellants contended that the default was void on its face because section 585, subdivision (c) does not allow entry of default where service is by publication. In addition, appellants claimed the request to enter default was defective for failure to include a declaration pursuant to section 585.5, and for the obviously misdated declaration of mailing. Finally, appellants requested that the court set aside the default through its inherent equitable power.

On January 3, 1992, respondents requested that the clerk enter a default judgment under section 585, subdivision (c). In a letter of January 8, 1992, counsel for appellants confirmed a conversation with the court clerk, who agreed there would be no action taken on respondents' request for court judgment until after the motion for relief from default was heard on January 22, 1992.

Respondents filed opposition to the motion for relief from default, contending it was an improper renewal of the same motion denied by the court on November 18, 1991, and was an improper motion for reconsideration.

---

lants]." There is no indication by *Crusader* that it did not receive appropriate notice from respondents.

An answer to the cross-complaint was also attached to the motion for relief from default.

[3]*Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.*

Moreover, appellants failed to comply with the time and declaration requirements of sections 1008 and 585.5, subdivision (c). Respondents further opposed the motion on the merits[4] and sought sanctions.

Appellants filed a reply to respondents' opposition to the motion for relief from default on January 17, 1992. They claimed the trial court invited them to file a new motion based on section 585 when it refused to consider new arguments not raised in the original moving papers. Moreover, they emphasized that the statutory scheme does not allow entry of default where service is by publication and that the relief requested should therefore be granted.

On January 22, 1992, Judge Paul Boland heard and denied the motion to set aside default. The court granted respondents' motion for sanctions and ordered that sanctions against appellants and their attorneys in the amount of $2,190 be payable within 30 days to counsel for respondents. Appellants immediately appealed from the order for them and their attorneys to pay sanctions.

A formal "judgment" denying the motion and imposing sanctions was filed April 6, 1992. Findings of fact were filed in support thereof.

On April 7, 1992, the request for default judgment by court pursuant to section 585 was submitted on declarations and reference to the court file. Judgment was entered on April 8, 1992, with interest from the date of judgment. On May 18, 1992, appellants appealed from the judgment.

This court consolidated the appeals for briefing, oral argument and decision.

### Discussion

I. *The Trial Court Did Not Err in Entering Judgment After Default Was Entered Against Appellants Following Service by Publication.*

A. *Current Law Provides for Entry of Default After Service by Publication. Appellants Have Failed to Demonstrate Prejudice From the Procedures Employed by Respondents.*

Section 585, subdivision (c), was amended in 1993 to specifically provide that where there has been service of the summons by publication, "upon the

---

[4]For example, respondents pointed out the then current edition of Weil and Brown, Civil Procedure Before Trial (The Rutter Group), specifically stated, "Some courts—e.g., Los Angeles Superior—permit entry of default any time after publication is complete, by application to a judge, or commissioner . . . even *before* the prove-up hearing." (Original italics.) Correspondence with Judge Weil confirms this practice and its authorization pursuant to section 101.06 of the clerk's manual.

expiration of the time for answering and upon proof of the publication and that no answer, demurrer, notice of motion to strike . . . has been filed, the clerk, or the judge if there is no clerk, upon written application of the plaintiff, shall enter the default of the defendant. The plaintiff thereafter may apply to the court for the relief demanded in the complaint; and the court shall hear the evidence offered by the plaintiff, and shall render judgment in his or her favor for such sum (not exceeding the amount stated in the complaint or in the statement required by Section 425.11) as appears by such evidence to be just. . . ."

The principal question raised by appellants is whether default could properly be entered following service by publication before the 1993 enactment. Prior to the 1993 amendment, subdivision (c) of section 585 provided in part:

"In all actions where the service of the summons was by publication the plaintiff, upon the expiration of the time for answering, may, upon proof of the publication, and that no answer, demurrer, notice of motion to strike . . . has been filed, apply in writing for judgment. The court shall thereupon require proof to be made of the allegations of the complaint . . . ."

Thus, prior to the amendment, plaintiffs could immediately seek judgment following service by publication. There was no specific statutory requirement to obtain entry of default before requesting judgment.[5] The issue before this court is whether plaintiffs who did seek and obtain entry of default after service by publication are somehow put in a worse position because they took this extra step prior to seeking judgment, a step permitted by local practice even before the 1993 amendment.[6] Appellants argue that respondents should not have been permitted to proceed as they did, contending that entry of their default was void, improperly and prematurely cutting off appellants' ability to defend against the action brought by respondents.

*Candelaria* v. *Avitia* (1990) 219 Cal.App.3d 1436, 1443-1444 [269 Cal.Rptr. 32], review denied, is instructive. The individual defendant in *Candelaria* was a babysitter in a day-care center who fled after scalding a

[5]Subdivisions (a) and (b) of section 585 provide for entry of default and judgment in actions if defendants have been served "other than by publication."

[6]Appellants concede that, under current California law and prior local practice in Los Angeles Superior Court, the entry of default following publication utilized by respondents is and was the practice in this locale. (See, e.g., *Brigante* v. *Huang* (1993) 20 Cal.App.4th 1569, 1588, fn. 15 [25 Cal.Rptr.2d 354], where in dicta the Court of Appeal, per Epstein, J., explained that an absent insured defendant could be served by publication and suffer both default and default judgment, prompting the insurer to enter a general appearance to protect its insured's (and its own) interest.)

19-month-old baby in hot water. (*Id.* at p. 1439.) She was served by publication, and the insurer of the property was advised of the child's injuries and the babysitter's flight. The insurer was also provided with a copy of the summons and complaint.

The first insurer then transferred the claim file to a second insurer and notified the second insurer that appellant had not been served. The second insurer denied coverage. There was an uncontested hearing, and the court entered judgment against the babysitter. Respondents demanded payment from the second insurer which, when notified of the judgment, filed a motion to set aside default and default judgment. The trial court denied the motion, and the Court of Appeal affirmed.

The default judgment was affirmed even though, unlike the case at bar, there had been no request for entry of default. There had in fact been no compliance with the affidavit requirement of section 587 prior to application for judgment under section 585, subdivision (c). (*Candelaria* v. *Avitia, supra,* 219 Cal.App.3d at p. 1444.) The court nevertheless upheld the judgment, finding error but no prejudice. There had been several unsuccessful efforts by respondents and the insurers to locate appellants. The Court of Appeal observed, "even if a copy of the request for uncontested hearing had been mailed to appellants' last known address, it was not likely that appellants would have received it. Consequently, there is no reasonable probability that had there been no error, the result would have been more favorable to appellants." (*Ibid.*)[7]

Here, respondents informed Crusader about the lawsuit, serving the insurer with copies of the complaint and summons. Counsel for Crusader refused to accept service of process for the Vargas. Respondents mailed to Crusader the request for entry of default and served Crusader with declarations of inability to ascertain the address of the Vargas. There is no contention that Crusader failed to receive these documents.

Under section 585 as it existed prior to the 1993 amendment, respondents then, without initially asking for entry of default, could have requested the court to enter judgment. As the court, in *Parish* v. *Peters, supra,* 1 Cal.App.4th at page 206, footnote 3, observed, ". . . this clerk's default is a superfluity in actions premised on service by publication." Nevertheless, respondents followed local practice; sought entry of default; and then sought

---

[7]The court in *Parish* v. *Peters* (1991) 1 Cal.App.4th 202, 211-217 [1 Cal.Rptr.2d 836], took issue with parts of *Candelaria,* holding that due process requires a nonstatutory notice to defendants served by publication of the amount of damages plaintiffs were seeking, not an issue in the case at bar.

entry of judgment.[8] In our view, appellants herein, like appellants in *Candelaria*, have failed to demonstrate prejudice from a procedure that may not have conformed to the existing statutory scheme.[9] Neither have appellants demonstrated that the trial court had a duty as a matter of law to set aside the default on equitable grounds. The trial court was well within its discretion in denying the motions.

### B. *The Trial Court Did Not Err in Denying Appellants' Motions for Relief From Default and to Vacate the Default.*

#### 1. *The Request to Enter Default, If Defective, Was Not Prejudicial.*

Appellants contend the request to enter their default was defective. It is true that the initial form request for entry of default, dated "10/01/90" (*October 1*, 1990), contains a declaration regarding mailing of the request, stating that on *November 2*, 1990, the request was not mailed to appellants, whose addresses are unknown, but was mailed to "defendant's attorney of record, if none, to each defendant at defendant's last known address." Crusader (appellants' insurer) was specifically listed as an addressee to whom the request for entry of default was mailed. Given the dates, this was necessarily an improper declaration.

To compound the error, appellants state that respondents filed a subsequent declaration of mailing on January 23, 1991, the same date respondents filed the October 1 declaration. The subsequent declaration states the request for entry of default was not mailed to appellants, whose address is unknown, or to their attorneys, whose "identities are also unknown." Appellants claim that this declaration, too, is inadequate under section 587 and that the default was not properly entered.

The language in section 587 does not apply to entry of default following service by publication.[10] Moreover, even if it did, the "mandatory language of the statute does not necessarily make it jurisdictional." (*In re Marriage of*

---

[8]The request for court judgment was appropriately served on opposing counsel.

[9]"Pursuant to article VI, section 13, of the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, . . . or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' 'A miscarriage of justice . . . occurs . . . when it appears reasonably probable that were it not for the error a result more favorable to the appellant could have been obtained.' [Citation.] 'Prejudice is not presumed and the burden is on the appellant to show its existence.' [Citation.]" (*Candelaria* v. *Avitia, supra*, 219 Cal.App.3d at p. 1444.)

[10]Section 587 provides: "An application by a plaintiff for entry of default under subdivision (a) or (b) of Section 585 or Section 586 or an application for judgment under subdivision (c) of Section 585 shall include an affidavit stating that a copy of the application has been mailed

*Harris* (1977) 74 Cal.App.3d 98, 102 [141 Cal.Rptr. 333], hg. den.) In *Harris*, there was evidence the wife received actual notice, and the court held any error in failing to file an affidavit would not be prejudicial. In the case at bar, Crusader does not maintain that it actually failed to receive timely notice that respondents intended to request appellants' default. Respondents mailed to Crusader their declarations of inability to ascertain address of both Vargas. Although the October 1, 1990, date for the declaration was incorrect, Crusader does not contend that it was not mailed the request for entry of default on November 2, 1990, or that it did not receive the request for entry of default.

Certainly, the better practice would have been to notify Crusader's counsel as well. There had been previous correspondence with a particular law firm, which had requested notice of service on appellants. Nevertheless, such counsel had specifically declined to accept service for appellants and had not yet determined if it would be representing them. (See *Drinnon* v. *Oliver* (1972) 24 Cal.App.3d 571, 580 [101 Cal.Rptr. 120], overruled on other grounds in *Johnson & Johnson* v. *Superior Court* (1985) 38 Cal.3d 243, 255, fn. 7 [211 Cal.Rptr. 517, 695 P.2d 1058] [insurer's disclaimer amounts to waiver of delivery of summons and complaint served on the insured].) Under these facts, we see no prejudice to appellants from any mistake in the mailing or affidavit process by respondents when Crusader had actual notice of all the relevant proceedings.

### 2. *The Trial Court Did Not Err in Denying Appellants' Belated Motion to Vacate the Default Pursuant to Section 585.*

■ Appellants do not raise on appeal the grounds urged in their motion for relief from default pursuant to section 473. Instead, appellants argue that their default should have been set aside for the reasons raised for the first time in their reply to respondents' opposition to the 473 motion and in appellants' subsequent motion to set aside the default, essentially the grounds raised on appeal relating to the lack of statutory authority for entering a default after service by publication.

---

to the defendant's attorney of record or, if none, to the defendant at his or her last known address and the date on which the copy was mailed. If no such address of the defendant is known to the plaintiff or plaintiff's attorney the affidavit shall state that fact. [¶] No application for judgment under subdivision (c) of Section 585 shall be heard, and no default under subdivision (a) or (b) of Section 585 or Section 586 shall be entered, unless the affidavit is filed. The nonreceipt of the notice shall not invalidate or constitute ground for setting aside any judgment."

Section 587 thus describes the affidavits necessary for entry of default after service other than publication and necessary for entry of judgment following service by publication but contains no provisions regarding affidavits for entry of default after service by publication.

Appellants attempt to justify this second bite at the apple. Although conceding that the motion to set aside the entry of their default was "not based upon different facts" than the motion pursuant to section 473, appellants proceed to contend that the second motion was "based upon a new legal argument" and was not a motion for reconsideration.[11]

However characterized, it is clear that the trial court has discretion in deciding whether to grant or deny motions for relief from default and motions to set aside default. (*Anderson* v. *Sherman* (1981) 125 Cal.App.3d 228, 237 [178 Cal.Rptr. 38]; *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 353 [66 Cal.Rptr. 240].) The trial court in the case at bar could easily determine that the initial motion for relief from default should be denied. Indeed, appellants do not even argue those grounds on appeal.

The initial motion was made on September 17, 1991, almost six months after default was entered by Commissioner Dickey on March 19, 1991. Appellants raised section 585 in their reply and then waited until the initial motion was denied before filing the motion to set aside default based on section 585. The trial court was well within its discretion in denying this attempted second bite at the apple. As discussed above, the motion could be denied on its merits. In addition, it could be denied as an inappropriate motion for reconsideration. The motion was based on the same facts and existing law. For this reason as well, appellants have failed to demonstrate that either the default or the default judgment should be set aside.

II.   *The Trial Court Properly Imposed Sanctions on the Vargas. Their Attorneys Did Not Appeal From the Sanctions Order Against Counsel.*

Finally, appellants contend that the trial court's imposition of sanctions on appellants and their counsel was improper. First, we note that counsel did not themselves appeal from the imposition of sanctions. The notice of appeal states only that "*Cross-Defendants Louis W. Varga and Dr. Agnus Varga appeal* from the Court's order of January 22, 1992 ordering [appellants] and their attorneys to pay sanctions in the amount of $2,190.00 in connection with [appellants'] Motion for Relief from Default." (Italics added.)[12]

The trial court found appellants' actions "are both frivolous and in bad faith and intended to cause unnecessary delay." Moreover, they are based on

---

[11]Section 1008 was effectively rewritten by (Stats. 1992, ch. 460, § 4) to provide for reconsideration upon different facts, circumstances "or law." Appellants' motion was filed December 9, 1991, prior to the effective date of the amended statute.

[12]In 1992, when the appeals herein were taken, an attorney or party could appeal from a monetary sanction order of an amount exceeding $750. The amount was increased to $5,000 in 1993 by the same legislation that amended section 585, subdivision (c). (Stats. 1993, ch. 456, § 10.) The attorney who is sanctioned should be included as an appellant in the notice of

"duplicative requests previously denied, mis-citing of facts and law and failure to follow the applicable law." The previous request for sanctions, following the initial motion, had been denied. In awarding sanctions, the court's order cited Los Angeles Superior Court Rules section 1109(3) "for failure or refusal to meet time standards and/or deadline," section 1008, and alternatively, section 128.5. Appellants contend that neither section supports the order in that (1) Los Angeles Superior Court Rules section 1109 was no longer in effect and, at any rate did not apply to motions for reconsideration; and (2) section 128.5 does not apply since the action was arguably meritorious and not taken for improper motives.

The duplicative nature of the request was sufficient to justify the sanctions imposed. Neither the court, litigants, nor opposing counsel should be subject to such sequential efforts to challenge rulings. This type of duplicative proceeding is not to be encouraged. Sanctions were properly imposed.

### Disposition

The judgment and sanctions order are affirmed. Respondents shall recover costs on appeal.

Boren, P. J., and Nott, J., concurred.

---

appeal filed either by the client or by both the client and the attorney. (*Calhoun* v. *Vallejo City Unified School Dist.* (1993) 20 Cal.App.4th 39, 42 [24 Cal.Rptr.2d 337] [appeal by client of sanction order against attorney is not reviewable].) Thus, this court lacks jurisdiction to review the portion of the sanction order applicable to counsel for appellants. In view of our disposition affirming the sanctions order as to appellants, there is no disparate result.