[No. G022642. Fourth Dist., Div. Three. Sept. 21, 2001.]

PHILLIP LABORDE, Plaintiff and Appellant, v.
SUSAN ARONSON et al., Defendants and Respondents.

460

## COUNSEL

Phillip Laborde, in pro. per.; Law Offices of Riordan J. Zavala and Riordan J. Zavala for Plaintiff and Appellant.

Callahan, McCune & Willis, Edward L. Schumann and Christopher J. Zopatti for Defendant and Respondent Susan Aronson.

Ginsburg & Hlywa, Evan L. Ginsburg and Russell E. Hlywa for Defendants and Respondents Evan L. Ginsburg and Law Offices of Ginsburg & Hlywa.

## OPINION

**BEDSWORTH, J.**—After an unsatisfactory divorce—almost, but not quite, a redundancy—Phillip Laborde sued his wife's former attorney, Evan L. Ginsburg, and Susan Aronson, the psychologist retained to conduct a custody evaluation in his marital dissolution proceeding. The complaint alleges breach of contract, malpractice, defamation, conspiracy to defame, invasion of privacy, conversion, interference with contract, intentional infliction of emotional distress, and injunctive relief. Aronson prevailed on a motion for summary judgment and the action against Ginsburg was dismissed with prejudice in the face of the same summary judgment motion. The trial court awarded each defendant sanctions pursuant to Code of Civil Procedure section 128.7. Laborde contests the judgments and the sanction award, but we find no error save our own, and therefore affirm.

At some point in the course of the Laborde marital dissolution proceedings, the attorneys handling the matter agreed to retain Dr. Aronson as an Evidence Code section 730 evaluator.[1] Laborde agreed to advance the costs subject to a court ruling apportioning her fees. Evan Ginsburg, the attorney representing Mrs. Laborde, mailed a confirming letter stating the evaluator would prepare an opinion and testify in court if necessary.

Laborde's attorney, Michael Wolf, requested Dr. Aronson to prepare an Evidence Code section 730 evaluation report. The doctor interviewed various family members, prepared an evaluation, and discussed the results with the parties. Because the results were not what he had hoped, Laborde directed another attorney, Riordan J. Zavala, to write Aronson a letter advising her she would be sued if she testified in the family law matter. Laborde also refused to pay Aronson's fees, forcing his ex-wife to pick up the tab. Aronson, in turn, forwarded Zavala's letter to the presiding judge of the family law court, indicating her "understanding that Mr. Laborde and Attorney Zavala's threatening an independent witness regarding her testifying is a felony."

While the family law case was still pending, Laborde filed a complaint naming Attorney Ginsburg and Aronson as defendants. The case against

---

[1] Evidence Code section 730 provides, in relevant part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at trial of the action relative to the fact or matter as to which the expert evidence is or may be required."

Ginsburg and his law firm, was based on their representation of Laborde's wife in the pending dissolution matter. In the fourth cause of action, Laborde alleged Ginsburg and Aronson conspired to defame Laborde by "planning and scheming to send a letter to the presiding judge at the Family Law Division of the Superior Court of [t]he County of Orange, wherein it was falsely asserted plaintiff had 'threatened' a witness in violation of the [P]enal [C]ode . . . ."

Both defendants asserted the litigation privilege (Civ. Code, § 47) in their demurrers to the complaint. Declining the invitation to enter into a series of pleadings skirmishes, the court overruled the demurrers and encouraged the defendants to raise the Civil Code section 47 privilege in the context of a motion for summary judgment. The court's tentative ruling specifically cautioned Laborde and Zavala they "should take no solace in these rulings but [it] is strongly recommended [they] take notice of [*Kaufman v. Superior Court* (May 27, 1997) G020180, opinion ordered nonpublished August 27, 1997,] and [Code of Civil Procedure] section 128.7."

In the interim, Dr. Aronson was declared the court's expert witness in the marital dissolution action, and her report and recommendations regarding child custody and visitation issues were received into evidence. (Evid. Code, § 730.) The court also found "an intimidation of the mental health expert witness, Dr. Aronson, who was ultimately declared the Court's 730 expert, per the Zavala letter. Attorney Zavala was an agent of [Laborde]."

Both defendants moved for summary judgment and/or adjudication of issues, and requested sanctions under Code of Civil Procedure section 128.7. In his motion, Ginsburg advised Laborde the request for sanctions would be withdrawn if the complaint was withdrawn within the next 30 days.

Laborde did not oppose Ginsburg's summary judgment motion, opting instead to file a request for dismissal of his complaint without prejudice. The court ordered the request withdrawn and dismissed the action "with prejudice" as to Ginsburg and his firm. The court also granted Aronson's motion for summary judgment, based on the litigation privilege.

As to the Code of Civil Procedure section 128.7 motions, the court awarded Aronson $24,000 in sanctions against Laborde and his attorney, Zavala, "contingent upon the court's approval of billing information which is to be provided to the court . . . ." The court also granted Ginsburg's motion and awarded some $33,000 in sanctions against attorney and client, finding the action was "frivolous and without merit . . . and with bad faith . . . ."

I

 Laborde first challenges the order granting Aronson's motion for summary judgment. He contends his suit fell within an exception to the litigation privilege, and should have been allowed to proceed. We conclude the trial court correctly determined Laborde's claims were barred by the litigation privilege expressed in Civil Code section 47, subdivision (b).

Civil Code section 47 states: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law . . . ." The first amended complaint set forth eight different causes of action against Dr. Aronson. In each instance, the conduct complained of was based on Aronson's appointment as an Evidence Code section 730 evaluator and expert witness in the Laborde divorce proceeding. The trial court ruled the litigation privilege applied and granted Aronson immunity for her statements and conduct in the underlying family law case. The trial judge noted the "Family Law Court did not issue a formal 730 Order, nor was there a signed Stipulation by the parties, [but] it is unequivocal that the parties to that action entered into an agreement to submit to and agreed to independent evaluation rather than retain their own experts on the issue of custody. Only after [Aronson] made her recommendations, did plaintiff raise this issue of exclusively retaining [her] as his expert. The agreement to jointly retain [Aronson] had been consummated by that time. Further, Judge Mandel then accepted [her] report as a '730' expert by nunc pro tunc order at trial. . . . As a result, there are no triable issues of fact and [Aronson] is entitled to immunity."

In evaluating this ruling, we find *Gootee v. Lightner* (1990) 224 Cal.App.3d 587 [274 Cal.Rptr. 697] instructive. There, the plaintiff sued a psychologist for professional malpractice, alleging intentional and negligent conduct in the course of psychological testing and evaluation performed in conjunction with judicial proceedings indistinguishable from ours. The trial court granted a defense motion for summary judgment, based on the Civil Code section 47 privilege, and the appellate court upheld it: "It is undisputed that [defendants'] role was a limited one: to evaluate the partisans in the custody matter for purposes of testifying concerning the custody dispute. Because the gravamen of [the plaintiff's] claim relies on negligent or intentional tortious conduct committed by [the defendants] in connection with the testimonial function, we conclude the absolute privilege bars civil lawsuits (other than for malicious prosecution) seeking to impose liability on [the defendants] for such misfeasance." (*Gootee v. Lightner, supra,* 224 Cal.App.3d at p. 591, fn. omitted.)

Similarly, in *Silberg v. Anderson* (1990) 50 Cal.3d 205 [266 Cal.Rptr. 638, 786 P.2d 365], the parties to a dissolution proceeding retained an independent psychologist to evaluate the parties and submit recommendations on custody issues. Displeased with the findings, the husband sued his wife's attorney for failing to disclose a preexisting relationship with the psychologist, which allegedly resulted in the preparation of a biased and defamatory report. Detailing the expansive nature of the privilege and its underlying rationale, the California Supreme Court held Civil Code section 47 covers all tort claims based on negligent *and* intentional conduct. (*Silberg v. Anderson, supra,* at pp. 219-220.) It applies to any communication, whether or not it amounts to a publication and "it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.]" (*Id.* at p. 212.)

Clearly, the basic rule contravenes Laborde's position. In his declaration in opposition to the motion, Laborde attempted to raise a spoliation of evidence issue, claiming Dr. Aronson tampered with a consent for release of medical records form to deprive him of his psychotherapist-patient privilege at trial.[2] The argument is premised on the following exception to the privilege: "This subdivision does not make privileged any communication made in furtherance of an act of intentional destruction or an alteration of physical evidence undertaken for the purpose of depriving a party to litigation of the use of that evidence, whether or not the content of the communication is the subject of a subsequent publication or broadcast which is privileged pursuant to this section." (Civ. Code, § 47, subd. (b)(2).)

The plain language of the statute makes it clear the exception only applies when the alleged alteration or destruction is intended to deprive a party of the "use" of that evidence. Here, the consent form at issue contained the following language: "The release of information shall be specifically limited to the following (if any): _____." According to Laborde, Aronson altered the document by writing the word "none" in the blank space provided. To support this contention, he included a declaration from handwriting expert Jerry Browne, who identified Dr. Aronson as the author. But even if this were true, it could not be argued there was an attempt to *deprive* Laborde of the use of any evidence and the statutory exception therefore did not apply.

In sum, Aronson established a complete defense to the causes of action set forth in the first amended complaint. The burden then shifted to Laborde to

---

[2]Aronson's request for judicial notice of court records in *Laborde v. Aronson* (Super. Ct. Orange County, 1999, No. 788239) is granted. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

raise "a triable issue of one or more material facts as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (o)(2).) This he failed to do. (See *Chaknova v. Wilbur-Ellis Co.* (1999) 69 Cal.App.4th 962, 974-975 [81 Cal.Rptr.2d 871].) Summary judgment was proper.

## II

At the close of the proceedings, the trial court sanctioned Laborde *and* Attorney Zavala "jointly and severally," awarding $24,000 to Aronson pursuant to Code of Civil Procedure section 128.7. The *only* argument Laborde advances against the award of sanctions to Aronson is this: If the summary judgment is reversed, the order imposing sanctions cannot stand. Given our conclusion the summary judgment was unassailable, that argument will not hunt.

We note Attorney Zavala did not notice an appeal from the order imposing these sanctions. We are therefore without jurisdiction to review that portion of the order.[3] (*Taylor v. Varga* (1995) 37 Cal.App.4th 750, 761, fn. 12 [43 Cal.Rptr.2d 904].)

## III

Finally, we turn to Laborde's complaint the trial court erred in awarding Code of Civil Procedure section 128.7 sanctions to Attorney Ginsburg because he represented himself in this action and did not pay or incur any liability for attorney fees. Code of Civil Procedure section 128.7 is a relatively new statute, and there is a dearth of case law on this topic.[4] Unfortunately, what little there is includes some overbroad language from one of our own opinions, which we seek now to clarify.

We said in *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214 [87 Cal.Rptr.2d 339] that "Under [Code of Civil Procedure] section 128.7, an attorney or *unrepresented party* who files a pleading, motion or similar paper impliedly certifies it has legal and factual merit. That certification includes:

---

[3]The only notice of appeal filed in this case reads as follows: "Plaintiff Phillip Laborde, by and through his attorney of record, Riordan J. Zavala, Esq., advances his notice of appeal from the order of summary judgment entered on 10/17/97, in favor of defendant Susan Aronson, as well as the orders imposing monetary sanctions under CCP section 128.7 in favor of that defendant and defendants Evan L. Ginsburg, Esq. and the Law Offices of Ginsburg & Hlywa."

[4]By its own terms, the statute remains in effect only until January 1, 2003, and will be automatically repealed unless a later statute deletes or extends the repeal date. (Code Civ. Proc., § 128.7, subd. (j).) If no action is taken, the former sanctions statute (Code Civ. Proc., § 128.5, now codified as Code Civ. Proc., § 128.6) will become operative on January 1, 2003. (Code Civ. Proc., § 128.6, subd. (f).)

The paper is not presented for an improper purpose (i.e., to harass, cause unnecessary delay, or increase costs of litigation); the legal contentions are warranted; and the factual contentions have evidentiary support. (§ 128.7, subd. (b).) The attorney or *unrepresented party* is subject to sanctions for violation of this certification." (*Id.* at p. 1220.) Discussing the differences between Code of Civil Procedure sections 128.7 and 128.5, its predecessor statute, a panel of this court concluded "under section 128.7, only an attorney or *unrepresented party* may be sanctioned. It does not authorize sanctions against the represented party. Under section 128.5, the party, attorney, or both, may be sanctioned." (*In re Marriage of Reese & Guy,* *supra,* 73 Cal.App.4th at p. 1221.) That seemed like a good idea at the time. There is a certain intuitive appeal to this approach, i.e., the person who signs the pleading or motion is the person who pays the price for any violation of the statute.

On closer inspection, however, it becomes clear that our discussion of the point—it was not essential to the decision in that case—is not accurate.[5] Pursuant to Code of Civil Procedure section 128.7, subdivision (d)(1), "Monetary sanctions may not be awarded against a represented party for a violation of paragraph (2) of subdivision (b)." Subdivision (b)(2) requires certification that the claims, defenses, or other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law or to establish new law. The logical inference, of course, is that monetary sanctions *can* be awarded against a represented party for a violation of subdivisions (b)(1) (document presented for an improper purpose, to harass, cause unnecessary delay, or needless increase in cost of litigation); (b)(3) (allegations or other factual contentions lack evidentiary support); and (b)(4) (denials of factual allegations not warranted by the evidence). In other words, the broad statement in *In re Marriage of Reese & Guy* that "under section 128.7, only an attorney or *unrepresented party* may be sanctioned. It does not authorize sanctions against the represented party" could be misleading. (See *Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10, 13, fn. 4 [76 Cal.Rptr.2d 171] [no monetary sanctions may be awarded against client for meritless contentions of law; " 'Monetary responsibility for such violations is more properly placed solely on the party's attorneys.' "].) Monetary sanctions *are* authorized against the client for some violations of subdivisions of section 128.7 not at issue in *In re Marriage of Reese & Guy, supra,* 73 Cal.App.4th 1214.

The order awarding sanctions to Attorney Ginsburg states "the actions brought against Ginsburg, et al., were frivolous and without merit . . . and

---

[5]This will be disturbing news to that large portion of the legal community which finds it impossible to mention the Court of Appeal without resort to adjectives such as "wise," "perspicuous," and "unerring."

with bad faith (harassment)." Put another way, both subdivision (b)(1) *and* (2) were violated here, and the trial court could impose sanctions against both attorney and client under subdivision (b)(1).

This, then, raises another question: Can Attorney Ginsburg and his law firm recover sanctions even though Ginsburg represented himself in the action and did not pay or "incur" any liability for attorney fees? Neither of the cases the parties cite is directly on point. (Compare *Trope v. Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259] [attorney who represents himself or herself cannot recover reasonable attorney fees under Civ. Code, § 1717 as compensation for time and effort he or she expends on own behalf or for lost professional opportunities] with *Abandonato v. Coldren* (1995) 41 Cal.App.4th 264, 268-269 [48 Cal.Rptr.2d 429] [there is nothing oppressive or one-sided in awarding attorney fees under Code Civ. Proc., § 128.5 to an attorney who litigates in propria persona; sanctions under § 128.5 may be awarded in favor of both a self-representing attorney and a nonattorney pro se litigant].) And we find no California authority directly on point.

However, Code of Civil Procedure section 128.7 is modeled, almost word for word, on rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.). In examining the provisions of section 128.7, California courts may look to federal decisions interpreting the federal rule. (*Malovec v. Hamrell* (1999) 70 Cal.App.4th 434, 440 [82 Cal.Rptr.2d 712]; *Goodstone v. Southwest Airlines Co.* (1998) 63 Cal.App.4th 406, 419 [73 Cal.Rptr.2d 655]; see *Cromwell v. Cummings, supra,* 65 Cal.App.4th at p. Supp. 14.)

In doing so, we find Federal Rules of Civil Procedure, rule 11(c)(2) (28 U.S.C.) allows the court, if it finds a violation of subsection (b), to make an "order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Code of Civil Procedure section 128.7, subdivision (d) similarly provides the court may award "some or all of the reasonable attorney's fees incurred as a direct result of the violation." The near identity of the two statutes on this point suggests to us that the right of federal authority could be trained on the California statute to good advantage.

*Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff* (S.D.N.Y. 1986) 638 F.Supp. 714 seems especially helpful. In that case, the plaintiff law firm (acting in propria persona) moved for and obtained sanctions against Aronoff and his counsel pursuant to rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.), on the ground that his affirmative defenses and counterclaim were frivolous and imposed merely to delay Kramer Levin's recovery of its attorney fees. Rule 11 requires that an attorney signing the

pleadings, motions or other papers certify that to the best of his knowledge, after reasonable inquiry, the papers are "well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law."

The district court "conclude[d] that defendant and his attorney have acted in bad faith in opposing plaintiff's claim for payment of legal services by alleging frivolous affirmative defenses and an equally meritless counter-claim. Furthermore, Aronoff's counsel twice filed answers for the defendant Trustee which it now admits it never represented. Such an unauthorized pleading led plaintiff to spend time and resources to reply to the 'Trust's' answer and amended answer, and also to serve notices of deposition and production of documents on the Trust by serving Aronoff's attorneys, who could receive no such notices for a defendant they did not represent. These actions fall short of an attorney's affirmative duty under Rule 11 to conduct a reasonable inquiry with respect to the facts and the law of every paper filed in court. *Wells v. Oppenheimer & Co., Inc.*, 101 F.R.D. 358 (S.D.N.Y.1984) (Knapp, J.). [¶] Under these circumstances, Rule 11 sanctions are appropriate against both Aronoff and his attorneys. The federal courts have always had the power to tax counsel fees against a party who litigates in bad faith, vexatiously, wantonly or for oppressive reasons. See *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). As this court stated recently, 'fee shifting becomes appropriate to compensate a litigant for legal fees he should never have been forced to incur. The purpose in such instance is one of deterrence.' *Vari-O-Matic Machine Corp. v. New York Sewing Machine Attachment Corp.*, 638 F.Supp. 713 (S.D.N.Y.1986) (Carter, J.); accord, *Nemeroff v. Abelson*, 620 F.2d 339 (2d Cir.1980). Accordingly, Kramer Levin is to submit to the court in due course a sworn, itemized statement with supporting data regarding the attorneys' fees it incurred in prosecuting this case." (*Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff, supra,* 638 F.Supp. at p. 726, italics omitted.)

*Kramer, Levin,* then, clearly supports the award of attorney fees under our circumstances. And, even though the opinion deals with the predecessor statute, Code of Civil Procedure section 128.5, the reasoning supporting the result in *Abandonato* is also pertinent here: "The considerations which powered *Trope* are not present when a court awards sanctions under . . . section 128.5. To begin with, sanctions under that section are not limited to court costs and attorney fees but include those reasonable expenses 'directly related to and in furtherance of the litigation' [citation] which are 'incurred as a result of bad faith actions and tactics.' [Citation.] For example, sanctions have been awarded to a party as 'compensation for time spent by [the party's] personnel in defending against the cross-complaint' [citation], and

as 'compensation for airfare and reimbursement for lost vacation' time. [Citation.] [¶] In addition, there is nothing oppressive or one-sided in awarding attorney fees under . . . section 128.5 to an attorney who litigates in propria persona. Unlike Civil Code section 1717, '[j]udgments for sanctions are not routine and are not necessarily related to the size of the recovery or the amount of time billed by the attorney. At least in theory, a judgment for sanctions could be greater than the amount of attorney time actually billed [and it] is more like a money judgment compensating a party for harmful conduct than it is like an award of fees as part of the costs of the lawsuit.' (*Banks* v. *Manos* (1991) 232 Cal.App.3d 123, 128-129 [283 Cal.Rptr. 318].) As a result, sanctions under section 128.5 may be awarded in favor of both a self-representing attorney and a nonattorney pro se litigant." (*Abandonato v. Coldren, supra,* 41 Cal.App.4th at pp. 268-269.)

The *Abandonato* court relied in part on a policy consideration we find persuasive here: "Holding that the attorney in that situation could not be compensated for reasonable expenses would create a separate and artificial category of litigants who would be inadequately protected against another party's bad faith tactics." (*Abandonato v. Coldren, supra,* 41 Cal.App.4th at p. 269.) In other words, if the point of these statutes is to deter bad faith tactics and frivolous litigation, it makes no sense to declare such tactics acceptable against attorneys or nonattorneys representing themselves in such matters. (See *Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc.* (1997) 60 Cal.App.4th 352, 368 [70 Cal.Rptr.2d 449].)

We are thus led to one inescapable conclusion—an award of sanctions compensating a self-representing attorney for expenses incurred in the defense of meritless claims furthers the intent of Code of Civil Procedure section 128.7, and nothing in this case suggests to us any reason the section should not apply to the facts of this case. The judgment is therefore affirmed. Respondents shall recover their costs on appeal.

Sills, P. J., and Moore, J., concurred.