[No. F055200. Fifth Dist. May 28, 2009.]

JESUS RODRIGUEZ et al., Plaintiffs and Respondents, v.
NEIDIN HENARD et al., Defendants and Appellants.

530

## Counsel

McCormick, Barstow, Sheppard, Wayte & Carruth and Jerry D. Casheros for Defendants and Appellants.

The Law Office of Nathan S. Miller and Nathan S. Miller for Plaintiffs and Respondents.

## Opinion

**KANE, J.**—Defendants Neidin Henard and Joseph Henard appeal from the denial of their motion under Code of Civil Procedure section 473 to set aside the defaults and default judgment taken against them.[1] Defendants contend the trial court should have granted the requested relief in light of an asserted "notice" defect concerning the default proceedings. Specifically, defendants stated in their declarations submitted in support of the motion that they never received a copy of plaintiffs' request for entry of default or request for a default judgment, and that said default papers were mailed using an incorrect ZIP code. After considering all the declarations, the trial court concluded defendants were adequately apprised of the default proceedings and denied the motion. Defendants' appeal followed. We will affirm.

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

## FACTS AND PROCEDURAL HISTORY

On October 26, 2007, plaintiffs, Jesus Rodriguez and Martha Rodriguez, filed their complaint against defendants, Neidin Henard and Joseph Henard, alleging that defendants committed fraud, conversion and breach of fiduciary duty.[2] According to the complaint, plaintiffs experienced difficulty in making mortgage payments on their home in Watsonville, California, and defendants offered to help out, eventually inducing plaintiffs to sign a power of attorney. When plaintiffs' Watsonville home was sold in April of 2007, defendants fraudulently caused the escrow company to pay $18,157 of the proceeds to defendants' personal account. Plaintiffs did not discover this fact until October of 2007. In May of 2007, plaintiffs attempted to purchase a new home in Fresno, California, and they deposited $38,000 into a purchase escrow. Defendants allegedly intervened and advised plaintiffs they had to move into a different, less expensive home that was located in Madera, California. After plaintiffs complied and moved into the Madera house, defendants caused the $38,000 to be transferred from the Fresno escrow into their own personal account. Plaintiffs discovered this fact in October of 2007. Thereafter, plaintiffs demanded that defendants return the $38,000 and the $18,157, but defendants allegedly failed or refused to do so. Plaintiffs then filed the instant lawsuit.

Plaintiffs' complaint and summons were duly served on defendants. According to the proofs of service on file in the trial court, Neidin Henard was served on October 27, 2007, and Joseph Henard was served on October 29, 2007. The summons clearly warned defendants that they had to respond: "You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. . . . If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court."

After the lawsuit was filed, plaintiffs' attorney, Nathan Miller, had several telephone conversations with defendants. Mr. Miller personally informed defendants that unless they responded to the complaint within the 30 days or otherwise made arrangements to pay plaintiffs the money they "stole," plaintiffs would be pursuing a default judgment against them.

---

[2] Santa Cruz Title Company was also named as a defendant in the trial court. For purposes of this appeal, however, the term "defendants" refers to Neidin Henard and Joseph Henard unless otherwise indicated.

In early November of 2007, defendants contacted a family friend who was also an attorney, Gary Talesfore. Defendants asked Mr. Talesfore if he would call Mr. Miller "to see if a settlement could be reached." Defendants were "informed and believe[d]" that Mr. Talesfore did in fact contact Mr. Miller. According to Mr. Talesfore, in November and December 2007, he spoke with Mr. Miller in an attempt to negotiate a settlement of the matter. Mr. Talesfore's declaration does not provide any elaboration on what he said to Mr. Miller or what Mr. Miller said to him.

Mr. Miller's declaration was far more specific. He recalled speaking with Mr. Talesfore in December of 2007, before taking defendants' defaults. Mr. Talesfore was well aware of the pending lawsuit against defendants at the time of their conversation. Mr. Miller advised him that plaintiffs had already received several false assurances from defendants that the money would be returned and warned that further delays would not be tolerated. Moreover, Mr. Miller specifically recalled telling Mr. Talesfore that unless the money was *immediately* returned to plaintiffs, he would move forward with an attempt to obtain a judgment.

Plaintiffs filed their request for entry of default on December 17, 2007, and default was entered that same day. During the following week, Mr. Miller spoke to Mr. Talesfore and informed him that because defendants failed to file a responsive pleading, he took their defaults. Mr. Talesfore then promised that a check would soon be delivered by defendants to repay a portion of the money (i.e., $32,000). No such check was ever delivered.

On December 19, 2007, plaintiffs filed their request or application to the court for entry of a default judgment. The request included supporting declarations to prove plaintiffs' damage claims. Pursuant to plaintiffs' request, the trial court scheduled a default prove-up hearing in the case for February 6, 2008. In January of 2008, Mr. Miller contacted Mr. Talesfore to inform him that a default prove-up hearing was set for February 6, 2008. Mr. Miller noted in his declaration that he called Mr. Talesfore 10 or 15 times that month in an effort to get through to him.

On February 7, 2008, the trial court conducted the default prove-up hearing and entered a default judgment in plaintiffs' favor in the amount of $59,597.86.

After plaintiffs initiated efforts to enforce the judgment, defendants promptly retained Mr. Casheros as their attorney and moved to set aside the defaults and default judgment pursuant to section 473.[3] Among other things, defendants argued in that motion that they never received a copy of the request for entry of default or the request for court judgment, in the mail or otherwise, and they pointed out that the ZIP code set forth on the affidavits of mailing was incorrect. Specifically, the affidavits of mailing submitted by plaintiffs stated that defendants' address was "19 South Circle Drive[,] Santa Cruz, CA 95076." Although the address was in all other respects accurate, the correct ZIP code was 95060. In addition to this alleged notice defect, defendants also argued that the defaults and default judgment should be set aside on the ground of excusable neglect because defendants were allegedly relying on Mr. Talesfore to handle things, and on the further ground of attorney fault because Mr. Talesfore admitted in his declaration that he neglected to tell defendants they needed to file an answer to the complaint.

The trial court rejected all of these grounds and denied the motion following oral argument on April 2, 2008. In denying the motion, the trial court explained at the time of the hearing that "credibility" issues were determinative. The trial court found defendants' and Mr. Talesfore's declarations to be lacking in credibility, not only because of the "artfully drawn" and "carefully crafted" wording, but also because of what was *not* said therein. In contrast, Mr. Miller's declaration in opposition to the motion plainly specified several conversations he had with defendants and with Mr. Talesfore, which indicated that defendants were aware of what was going on in the case. The trial court also found that defendants' argument based on the ZIP code error was unpersuasive. Since Santa Cruz is a small town and the streets are not complicated, and all but the last two digits of the ZIP code were correct, the trial court had great difficulty believing defendants' assertion that the default papers were not received.

On appeal, defendants claim the trial court erred in denying the motion based on the alleged notice defect only. The other grounds that were asserted in support of the motion in the trial court are not raised on appeal. We shall limit our review accordingly.

## DISCUSSION

### I. *Standard of Review*

" 'A ruling on a motion for discretionary relief under section 473 shall not be disturbed on appeal absent a clear showing of abuse.' [Citation.]"

---

[3] The substitution of attorney form filed on March 18, 2008, indicated that defendants formerly represented themselves.

(*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257 [121 Cal.Rptr.2d 187, 47 P.3d 1056].) " ' "[T]hose affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed." ' [Citations.]" (*Id.* at pp. 257–258.) Where the trial court denies a motion for relief from default, the strong policy favoring trial on the merits conflicts with the general rule of deference to the trial court's exercise of discretion. (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 235 [211 Cal.Rptr. 416, 695 P.2d 713].) Thus, an order denying relief is more carefully scrutinized on appeal than an order permitting a trial on the merits. (*Id.* at p. 233.) Doubts are resolved in favor of the application for relief from default, and in such cases the order denying relief will be reversed. (*Id.* at p. 235.) Unless grounds for denial of relief are reasonably clear, the policy favoring trial on the merits prevails. (*Ibid.*; 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, §§ 190–191, pp. 790–791.)

## II. *The Trial Court Did Not Err in Denying Defendants' Motion*

Defendants contend that plaintiffs' use of an incorrect ZIP code in mailing the default papers, as evidenced by the affidavit of mailing under section 587, resulted in a notice defect that entitled them to relief from default and default judgment, and consequently the trial court abused its discretion in denying the motion.

█ We begin our consideration of this issue by reviewing the notice or mailing requirements related to default proceedings. After a defendant has been served with summons and complaint and the time to file an answer has expired, upon written application by the plaintiff, the clerk shall enter default against the defendant. (§ 585.) Section 587 states that the plaintiff's application (or request) for entry of default and/or for default judgment must include an affidavit stating that a copy of the application has been mailed to the defendant's attorney of record, or if none, to the defendant at his or her last known address. Section 587 further provides: "No default under subdivision (a), (b), or (c) of Section 585 or Section 586 shall be entered, unless the affidavit is filed. *The nonreceipt of the notice shall not invalidate or constitute ground for setting aside any judgment.*" (Italics added.)

In the present case, there is no dispute that the summons and complaint were properly served on defendants and the time to respond expired prior to plaintiffs' request for entry of default and default judgment. The sole issue

before us relates to the mailing requirement of section 587 that comes into play when a plaintiff applies to the court clerk for the entry of a default or a default judgment, and the ramifications of a defective affidavit of mailing.

■ The requirement of an affidavit of mailing under section 587 is not jurisdictional, and hence the failure to file one does not deprive the trial court of jurisdiction to render judgment. (*In re Marriage of Harris* (1977) 74 Cal.App.3d 98, 102 [141 Cal.Rptr. 333] (*Harris*).) In *Harris*, the trial court's error of entering default judgment in the absence of an affidavit of mailing as required by section 587 was found to be *nonprejudicial* because the defendant received actual notice of the default proceedings by other means. Accordingly, the trial court's order denying the defendant's motion to set aside default and default judgment was affirmed. (*Harris, supra*, at pp. 102–103.) Similarly, in *Candelaria v. Avitia* (1990) 219 Cal.App.3d 1436 [269 Cal.Rptr. 32], no prejudice was shown from the lack of an affidavit of mailing under section 587 where prior efforts to locate the defendants were unsuccessful and letters sent to the defendants' last known address were undelivered. The appellate court reasoned that even if a copy of the request for default had been mailed, "it was not likely that [the defendants] would have received it." (*Candelaria v. Avitia, supra*, at p. 1444.) Thus, no prejudice was apparent and the order denying the defendants' motion was affirmed.

Cases involving alleged defects in the affidavit of mailing have taken the same approach. For example, in *Taylor v. Varga* (1995) 37 Cal.App.4th 750 [43 Cal.Rptr.2d 904], the appellants claimed the default should be set aside because of an error in the information set forth in the affidavit of mailing. The Court of Appeal rejected that challenge, explaining that "we see no prejudice to appellants from any mistake in the mailing or affidavit process by respondents when [the appellants' insurer] had actual notice of all the relevant proceedings." (*Id.* at p. 760.)

■ Here, we likewise conclude that any error with respect to the mailing or the affidavit process was not prejudicial. The declaration of Mr. Miller in opposition to the motion, which the trial court was entitled to credit over the declarations submitted by defendants, reflected that defendants and Mr. Talesfore were told of plaintiffs' intention to take steps necessary to obtain a default judgment in the absence of immediate repayment of the monies that were allegedly stolen by defendants. Further, Mr. Miller's declaration averred that in January of 2008 he advised Mr. Talesfore of the default prove-up hearing that was scheduled for February 6, 2008. Thus, even if copies of plaintiffs' request for entry of default and for default judgment were not actually received by defendants in the mail, defendants were not

prejudiced thereby. Moreover, section 587 expressly provides that *nonreceipt* of the notice is not, by itself, a ground for setting aside a default judgment. (§ 587; *Jackson v. Bank of America* (1983) 141 Cal.App.3d 55, 59 [190 Cal.Rptr. 78] [nonreceipt of § 587 notice is not adequate ground for setting aside a default or default judgment].)[4]

A further indication of lack of prejudice is that defendants learned of the default and default judgment in sufficient time to bring a motion for relief under section 473, and they did in fact file such a motion. But since defendants failed to satisfy the trial court that any statutory basis upon which to set aside the default and default judgment existed (e.g., excusable neglect or attorney affidavit of fault), and since defendants have failed to raise such issues on appeal, those questions are now settled and we conclude that defendants have not been prejudicially harmed by the purported mailing defect. Had the default papers been mailed with the correct ZIP code, there would be no difference in outcome.

■ Defendants rely on *Moghaddam v. Bone* (2006) 142 Cal.App.4th 283 [47 Cal.Rptr.3d 602], a case in which an order of the trial court was set aside as void because prior to the hearing of a motion, the notice of motion was not served to the opposing party's correct address due to a faulty ZIP code. (*Id.* at p. 288.) That case is clearly distinguishable since it dealt with the requirement of providing notice of motion in advance of a hearing on a law and motion matter. In such cases, the adverse party whose rights may be affected must be given notice and an opportunity to contest the matter. (See §§ 1005, 1010, 1013.) Here, in contrast, upon plaintiffs' application, the clerk had a ministerial duty to enter defendants' default. (§ 585; *Bristol Convalescent Hosp. v. Stone* (1968) 258 Cal.App.2d 848, 862 [66 Cal.Rptr. 404]; *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 534 [75 Cal.Rptr.3d 19]; 6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, § 160, pp. 600–601.) There was no hearing at which defendants had a right to appear. Moreover, section 587 does not provide for advance notice, but merely requires an affidavit stating that a copy of the application has been mailed to the defendant. As a

---

[4] Of course, actual receipt of the default papers would positively demonstrate a lack of prejudice. Although we have focused on the other evidence indicating lack of prejudice, we believe that the trial court was entitled under the declarations to conclude that defendants lacked credibility even as to their claim of nonreceipt of the default papers, for the reasons cited by the trial court in its findings. Since it was an inference the trial court could reasonably draw under all the circumstances before it, we do not disturb such findings on appeal. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610 [109 Cal.Rptr.2d 256] [setting forth standard of review under abuse of discretion standard].)

practical matter, "the notice is commonly mailed immediately before requesting default" (6 Witkin, Cal. Procedure, *supra*, § 162, p. 604), which means that in many if not most instances it will not be received in the mail until after default has been taken.[5]

The latter point is noteworthy. Although the purpose of section 587 is to minimize the likelihood that a default or default judgment will be taken against a party who intends to defend on the merits (*Harris, supra*, 74 Cal.App.3d at p. 101), the statute accomplishes this purpose through an affidavit process that does not require advance notice. (§ 587; 6 Witkin, Cal. Procedure, *supra*, § 162, p. 604; see also *Bellm v. Bellia* (1984) 150 Cal.App.3d 1036, 1038 [198 Cal.Rptr. 389] [affirming there is no legal obligation to give counsel advance notice of taking a default, but noting that failure to do so risks that the trial court may decide to grant relief from default].) It appears the statutory purpose is furthered by the mandatory affidavit of mailing because the defendant will, in most instances, promptly learn of the default or default judgment and may then proceed to have such proceedings set aside without further delay, if grounds to do so exist. (See *Harris, supra*, at p. 101 [sponsor of statute, the State Bar of California, sought to alleviate incidence of motions for relief after a lengthy "lapse of time"].)[6] Here, whether or not defendants received the default papers in the mail, it is clear that they learned of the default proceedings in plenty of time to attempt to set them aside, but as noted, they failed to present persuasive or adequate grounds for doing so.

We conclude that to the extent any error occurred with respect to the mailing or affidavit process provided in section 587, such error did not result in prejudice to defendants. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

---

[5] In the present case, plaintiffs' request for entry of default was filed on December 17, 2007, and the clerk entered default that same day. The affidavit of mailing showed that a copy of the request was mailed to defendants on December 17, 2007. Even if the mailing had been flawlessly addressed, default would still have been entered before the copy reached defendants by mail.

[6] Section 587, enacted in 1969, was part of a bill sponsored by the State Bar of California. (*Harris, supra*, 74 Cal.App.3d at p. 101.) We note in passing that it has been stated in the Review of Selected 1969 Code Legislation (Cont.Ed.Bar 1969) at page 83: "Section 473, which provides for relief from defaults or default judgments taken through mistake, inadvertence, surprise, or excusable neglect, is obviously useful only for defendants who learn of the default or the judgment within the six-month period in which relief is available under the section. For this reason, new [section] 587 requires that an application for entry of a default . . . or of a judgment, . . . include an affidavit by plaintiff or his attorney that a copy of the default application has been mailed to the defendant's attorney . . . [or] to the defendant at his last-known address."

## DISPOSITION

The order of the trial court is affirmed. Costs on appeal are awarded to plaintiffs.

Dawson, Acting P. J., and Hill, J., concurred.